0486

Richard C. RINGER and Anne S. Ringer, Appellants, v. David GRAHAM; Newberry Federal Savings and Loan Association; Delph Context Company; Century Builder Inc.; White Electric Company; Stier Supply Company; Bilt Rite Corp.; The Lite House, Inc.; Chapin Concrete Corp.; Columbia Lumber Company; Whitaker Floor Coverings; G. Russell Shealy; and John Willingham, d/b/a Willingham's Septic Tanks, Respondents.

(331 S. E. (2d) 373)

Court of Appeals

*Spencer Andrew Syrett* and *John S. Huggins,* Columbia, *for appellants.*

*Richard M. Kenan, Eugene C. Griffith,* and *James Spencer Verner,* all of Newberry, *David B. Butler,* Columbia, and *Alvin J. Neal,* Irmo, *for respondents.*

Heard March 28, 1985.

Decided May 31, 1985.

CURETON, Judge:

This case involves a construction contract between appellants Richard C. Ringer and Anne S. Ringer and the respondent, David Graham. The disputed issues before the trial court were the amount of the contract, the right of Graham and the other respondents to mechanic's liens, and the amounts of their liens. The trial judge granted the respondents' motions for directed verdicts, finding that the amount of the contract was $97,000 and that all respondents were entitled to recover on their claims. The Ringers appeal. We reverse.

The Ringers essentially allege in their complaint that they had a contract with Graham to construct their home for a sum not to exceed $85,000; that they had disbursed $79,338.70; that only $5,661.30 remained undisbursed under the contract; that the respondents, with the exception of Newberry Savings and Loan, had furnished labor or materials in the construction of the house totaling approximately $15,205.33, and that these persons had filed or had the right to file mechanic's liens. The Ringers also allege that they should be permitted to pay into court the sum of $5,661.30 to be distributed to the respondents and to obtain a court order freeing their property from the respondent's claims. Additionally, they allege that Newberry Savings and Loan issued a check in the amount of $16,685.20 which was payable to them and Graham for the balance of the construction loan but that Graham refused to endorse it. They request a court order requiring him to endorse the check to them.[1] As to Newberry, the Ringers allege that because Newberry breached its duty to inspect the construction of the

---

[1] The Ringers set up a construction account and placed some $37,000 of their personal funds in the account. They then obtained a construction loan from Newberry Savings and Loan in the amount of $60,000.00. Draws made on the construction loan proceeds were placed in the account. The $16,685.20 check represents the balance of the undisbursed construction loan.

house, they are entitled to judgment against Newberry if their liability to the respondents is found to exceed the sum of $85,000.

The respondents, on the other hand, claim that the amount of money owed by the Ringers under their arrangement with Graham exceeded $85,000. Moreover, they assert that since their liens are premised on South Carolina Code of Laws Section 29-5-10, their right to mechanic's liens is unaffected by the amount of the contract between the Ringers and Graham.[2] They ask the court to foreclose their liens or protect their claims.

The operative portion of the construction contract that gives rise to the disagreement in this case is Article 4 which reads:

> It is mutually understood and agreed that the stated above amount [$85,000] is a (sic) not to exceed (sic) amount. It is further understood that contractor will be paid a weekly salary of $450.00 per week for twenty weeks during construction period, and at final completion and acceptance by the owner, contractor will be paid $3,000.00. All other cost (sic) will be actual cost (sic).

The Ringers contend that under this provision, the sum they agreed to pay Graham, including salary and bonus, was $85,000. The respondents contend that the contract terms obligated the Ringers to pay a total of $97,000 for construction of their home.

After the Ringers testified in support of their claim, the respondents moved for a directed verdict on the ground that the only reasonable inference deducible from the evidence is that the contract was for $97,000.00 and that they were entitled to recover on their liens or claims in the amounts alleged. The trial judge agreed and directed a verdict in favor of all the respondents except Graham. As to Graham, he directed a verdict for the amount of the construction contract, but found that there remained a question as to the amount of set-off the Ringers were entitled to receive against the sums

---

[2] Code Section 29-5-10 gives a mechanic's lien to persons who by agreement or with the consent of the owner perform labor upon or furnish materials in the erection of a structure. Such a lien is unaffected by the amount of the contract between the owner and the contractor.

due because of Graham's defective work. The trial judge then directed Graham to present his defense to the claim for a set-off. Graham declined and rested his case. The Ringers then requested permission to testify concerning the set-off. The trial judge denied their request and took the question of the set-off under advisement. Thereafter, the judge issued his order which purported to decide the case on the merits in favor of all the respondents without any mention of the directed verdicts which he had earlier entered. While the Ringers raise several issues on appeal, the dispositive issue is whether the trial judge should have in any event granted respondents' motions for directed verdicts.

This case comes before us in a rather confusing posture. First, the trial judge permitted the respondents to make motions for directed verdicts before all the testimony on both sides was in; this was error. *Jacks v. Townsend*, 228 S. C. 26, 88 S. E. (2d) 776 (1955). Second, the trial court's order purports to decide the case on the merits as if directed verdicts had not been entered for the respondents. Third, the Ringers specifically requested that the court make some disposition of the final disbursement check. The court stated it would dispose of the issue in its written order but then neglected to do so. Finally, the trial judge granted the mechanic's lienors judgments on their counterclaims even though none of them presented evidence in support of their claims. In fact, the record reflects that some of the claimants had not even filed mechanic's liens.[3]

Although it was error for the trial judge to have entertained a motion for directed verdict at the time he did, the appellants did not object to the nature or timeliness of the motion. The error is not jurisdictional and we will not on our own motion consider it. *See Arnold v. Arnold*, 328 S. E. (2d) 924 (S. C. App. 1985) (failure of appellant to object before family court to its granting of motion for summary judgment amounted to waiver of right to argue the authority of that court to grant such motion on appeal).

---

[3] We are aware that the Ringers alleged in their petition that the respondents furnished services and materials in the approximate amount of $15,205.33. However, there was no admission in either their pleadings or testimony of the precise sum due each claimant.

In deciding motions for directed verdict and nonsuit,[4] ▮ the evidence and all reasonable inferences that may be drawn from it must be viewed in the light most favorable to the non-moving party. If there is any evidence tending to prove the allegations of the complaint, these motions must be denied. *Olin Mathieson Chemical Corp. v. Planters Corp.*, 236 S. C. 318, 114 S. E. (2d) 321 (1960); *Melton v. Williams*, 281 S. C. 182, 314 S. E. (2d) 612 (Ct. App. 1984). The effect, therefore, of a motion for nonsuit is the admission of the truth of the evidence of the party against whom the motion is made as well as all reasonable inferences arising therefrom. *Hanselmann v. McCardle*, 275 S. C. 46, 267 S. E. (2d) 531 (1980). In considering the motion, it is not the province of the court to weigh the testimony but only to determine if there is any relevant competent evidence reasonably tending to establish the material elements of the case that is challenged. *Brown v. Reynolds*, 266 S. C. 41, 221 S. E. (2d) 396 (1975); *Chaney v. Burgess*, 246 S. C. 261, 143 S. E. (2d) 521 (1965); *Speed v. NAACP*, — S. C. —, 325 S. E. (2d) 336 (Ct. App. 1985). When the evidence is viewed as a whole in the light of these principles (with particular emphasis on the fact that none of the respondents presented any evidence which refuted the Ringers' testimony), a reasonable inference to be drawn from the testimony is as follows.[5]

In April 1982, the Ringers as owner and Graham as ▮ contractor, entered into a contract whereby Graham agreed to construct the Ringer's home for the sum of $85,000.00. The Ringers agreed to pay Graham in lieu of profit and overhead the sum of $450.00 per week and an additional bonus of $3,000.00 at the time the house was completed. It was further agreed that the cost of all labor, materials, salary and bonuses would not exceed the sum of $85,000.00. The Ringers agreed to pay Graham in lieu of profit and overhead the sum of $450.00 per week and an additional bonus of $3,000.00 at the

[4] In order to adequately review this case we will consider the respondent's motions as motions for nonsuit. Such consideration will not prejudice the parties since the rules governing directed verdicts also govern nonsuits. *Richardson v. Williamson*, 256 S. C. 134, 181 S. E. (2d) 262 (1971); *Smith v. Southern Railway-Carolina Division*, 96 S. C. 153, 79 S. E. 1099 (1913).

[5] We recognize that there are some inconsistencies in the Ringers' testimony. Such inconsistencies, however, reflect on credibility and we do not judge credibility in considering the evidence on a motion for directed verdict.

time the house was completed. It was further agreed that the cost of all labor, materials, salary. and bonuses would not exceed the sum of $85,000.00. Because Graham was just beginning his contracting business, the Ringers agreed to disburse funds to laborers, materialmen and subcontractors hired and supervised by Graham. While the Ringers assisted in selecting carpet, appliances, and lights, they did not contract directly with the suppliers of these items. Nevertheless they did consent to the furnishing of materials and services by Columbia Lumber Company, Whitaker Floor Coverings, Bilt Rite Corporation and John Willingham.

We hold that there was evidence from which the fact finder could reasonably infer that the Ringers proved the material elements of their complaint regarding the amount of the contract and their contracting capacity with several of the respondents. Further, none of the respondents proved the amounts of their lien/claims. It was thus error for the trial judge to have granted respondents' motions and entered judgment for them on their counterclaims.

Accordingly, the order of the trial judge is reversed and the case remanded for a new trial. Because a new trial is granted, discussion of the other issues raised by the Ringers is unnecessary.

Reversed and remanded.

GARDNER and GOOLSBY, JJ., concur.